**Elmer L. BLAIR, Appellant,**

v.

**GENERAL ELECTRIC COMPANY and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

July 8, 1977.

Rehearing Denied Aug. 12, 1977.

Discretionary Review Granted Nov. 14, 1977.

W. David Klingman, Frockt & Klingman, Louisville, for appellant.

Charles S. Cassis, Hal Nance Bogard, Brown, Todd & Heyburn, Louisville, for appellee, General Electric Co.

William L. Huffman, Director of Workmen's Compensation Board, Dept. of Labor, Frankfort, for appellees.

Before WHITE, COOPER and LESTER, JJ.

WHITE, Judge.

The issue in this Workmen's Compensation case is whether the appellant is limited to the "price tag" benefits as set out under KRS 342.730(1)(c)16. or should be entitled to an award under KRS 342.730(1)(c)27. commensurate with his occupational disability. The Board awarded appellant the price tag benefits and the circuit court affirmed. On this appeal, it is contended that under the findings of fact made by the Board, it was error not to award benefits under KRS 342.730(1)(c)27.

The evidence indicated that on December 8, 1973, the claimant, age 42, sustained an injury to his right eye as the result of a work-related accident. The claimant has held a succession of jobs with General Electric until he reached his present job classification of die setter. He has accumulated considerable seniority. As a die setter, claimant Blair is required to load and unload dies on the presses, transport them to the die shop, set up welders, change electrodes and put steel into the presses. He must also drive a forklift and use wrenches to take the dies out and put them back in.

Subsequent to the injury, he returned to work in his same job classification. Blair's supervisor testified that he is somewhat slower, but that he does all the jobs he is supposed to do. His supervisor is satisfied with his performance.

As a result of the accident, Blair was operated on three times. Legally, he is blind in his right eye. Medical testimony indicates that the claimant's depth perception has been greatly altered and impaired. The evidence shows that the injured eye is sensitive to light and must be shielded by a dark lens.

Mr. Blair is married and has one dependent daughter living at home. His average weekly wage at the time of the accident was $5.33 per hour or $213.20 per week. As of January 1, 1975, he was earning $5.84 per hour or $234.00 per week.

KRS 342.730(1)(c)27. provides as follows:

If the effects of any of the injuries, or disabilities, from occupational diseases, or losses, mentioned in this section adversely affect a workman's ability to labor, or limit his occupational opportunities to obtain the kind of work he is customarily able to do, his compensation benefits shall not be limited to the amounts provided by this section, and he shall be awarded compensation benefits under some other applicable or appropriate section of this chapter which would provide more compensation benefits for his disability.

As to limitations on the claimant's occupational opportunities, the Board made the following findings of fact:

Three vocational experts testified in the case, David Dobson, William E. Durbin and William A. Duffy. Mr. Dobson felt that the Plaintiff would sustain some loss of employment opportunity should he ever leave his present job at GE. He did feel that because of the job skills possessed by the Plaintiff that he should be able to find employment. Mr. Duffy, the Manager of Employment & Relations Practices at General Electric testified that prior to Plaintiff's accident he was able to perform approximately 90% of the jobs at GE and after the accident, he could still perform between 80% and 83% of the jobs there. This would translate into an occupational disability for loss from 7% to 10%. Mr. Durbin, an employment counselor, testified that the Plaintiff would be precluded from competing in 3% to 4½% of the jobs on the open labor market as the result of his injury.

The Board then proceeded to award compensation under the schedule of benefits provided under KRS 342.730(1)(c)16.

The appellant argues that in light of the testimony of the three vocational experts it was error for the Board not to award benefits under KRS 342.730(1)(c)27. We disagree. The evidence was that Mr. Blair had returned to work at the same job classification and in fact was making more money after the accident than he had before. *He has considerable job security* as a result of accumulated seniority, and his supervisor testified that Blair's job performance is satisfactory.

Under these facts, the Board could properly find that the loss of his right eye had not affected his occupational opportunities to obtain the kind of work he is customarily able to do. We find no error in the Board's refusal to apply KRS 342.730(1)(c)27.

The judgment is affirmed.

ALL CONCUR.